UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORDAN BALDWIN, an individual,

       Plaintiff,

v.

ANDREW FRANTZ, individually,

BRICE KERSHEN, individually,

JENNA BROWER, individually,

and

JUSTIN FORCE, individually,

       Defendants.

Case No. 1:23-cv-
Hon.

| William F. Piper (P38636)<br>William F. Piper, P.L.C.<br>**Attorney for Plaintiff**<br>1611 West Centre Avenue, Suite 209<br>Portage, MI 49024<br>Phone: 269.321.5008<br>Fax: 269.321.5009<br>Email: wpiper@wpiperlaw.com | |

## COMPLAINT

The plaintiff Jordan Baldwin, by and through his attorney William F. Piper, PLC., for his complaint, states as follows:

### JURISDICTIONAL ALLEGATIONS

1. The plaintiff Jordan Baldwin is a white man who lives at 149 Spring Street in Battle Creek, Michigan, and he lived there at all times relevant to this complaint

2. The defendants were police officers with the City of Battle Creek Police Department at all times relevant to this complaint, and they are currently, upon information and belief.

3. The events complained of occurred on February 2, 2023 in Mr. Baldwin's driveway located at 149 Spring Street in Battle Creek, Michigan.

4. The events complained of occurred under color of state law but not under a legitimate exercise of governmental authority.

5. The jurisdiction of this court arises under 28 USC § 1331 and 28 USC § 1337.

6. The claims in this case arise under 42 USC § 1983.

7. Certain claims in this case alleged herein arise under this court's supplemental jurisdiction to hear and try state law claims arising out of the same transactions and occurrences as the federal law claims.

## COMMON ALLEGATIONS

8. The plaintiff restates and realleges as though fully set forth herein paragraphs 1-7 of this complaint.

9. Between 5:00 p.m. and 5:30 p.m. on February 2, 2023 Mr. Baldwin left for work in his black van.

10. Mr. Baldwin quickly saw 4 police officers nearby, and he suspected, because of the area he lives in, that they were going to make a pretextual stop of him.

11. Mr. Baldwin, obeying all traffic laws, having all exterior lights on his vehicle in working order, and wearing his seatbelt, turned his vehicle around and pulled into his driveway.

12. After pulling into his driveway and stopping his vehicle in his driveway, Mr. Baldwin then removed his seatbelt.

13. Mr. Baldwin then turned around to confirm that the officers were pulling in behind him, and then he turned back and waited facing forward for the officers to arrive. Two approached his driver's side door, and two approached his passenger's side door.

14. An officer then approached the front passenger side window of Mr. Baldwin's vehicle and asked him if he is in a hurry and if he has his drivers license.

15. Mr. Baldwin asked the officer why he was being stopped.

16. Upon information and belief, a male officer on the passenger side told him that his brake lights were out.

17. Mr. Baldwin objected immediately and vehemently, telling the officers that all of his lights were working.

18. All of Mr. Baldwin's exterior lights worked, and what the officer had said about his brake lights being out was false.

19. Upon information and belief, a male officer on the passenger side then stated, "And you don't have your fucking seatbelt on man."

20. The officer's statement set forth in paragraph 19 above was only true at the time after Mr. Baldwin had stopped his vehicle in his own driveway, but Mr. Baldwin was wearing his seatbelt when he was driving on the street, and no officer could have seen Mr. Baldwin not wearing his seatbelt when he was driving on the street, because Mr. Baldwin had been wearing his seatbelt then.

21. Upon information and belief, the male officer in the passenger side told the other officers to remove him from the vehicle because he was allegedly moving around too much.

22. Mr. Baldwin objected, saying that he was not moving around.

23. A male officer on the driver's side then removed Mr. Baldwin from the vehicle and handcuffed him with his hands behind his back.

24. Mr. Baldwin immediately objected, asking them why he was being removed from the vehicle.

25. A male officer then searched the pockets of Mr. Baldwin's pants, removing a number or items, including his wallet.

26. An officer walked away from the vehicle and called out the stop of Mr. Baldwin.

27. The officer was standing by Mr. Baldwin's taillights, and Mr. Baldwin's brake lights, and other lights, were clearly illuminated.

28. Mr. Baldwin was standing there with the other officer, and he insisted that his brake lights were working.

29. Mr. Baldwin also indicated several times that he did not consent to the search of his vehicle.

30. The officers then opened Mr. Baldwin's driver's side door and searched the area around the driver's seat and passengers seat and floors and other areas in Mr. Baldwin's vehicle.

31. Mr. Baldwin continued to assert that his vehicle lights were working.

32. In response, one of the police officers got out of Mr. Baldwin's front passenger seat and stated, "You know I told him he didn't have his seatbelt on as well."

33. Mr. Baldwin continued to object to the continuing search of his vehicle.

34. After finding nothing, an officer removed the handcuffs from Mr. Baldwin around nine minutes or so after the encounter had begun.

35. As a result of the incident described above, Mr. Baldwin suffered and will continue to suffer extreme anger, shock, humiliation, embarrassment, fear, emotional distress, interruption of his work day, physical pain, inconvenience, a loss of enjoyment of life, a feeling of disrespect, and other damages.

## COUNT I – FOURTH AMENDMENT VIOLATIONS – UNCONSTITUTIONAL STOP, DETAINMENT, ARREST, AND SEARCH – 42 USC § 1983

36. The plaintiff restates and realleges as though fully set forth herein paragraphs 1-35 of this complaint.

37. It was clearly established on February 2, 2023 that a police officer cannot stop a motorist for a traffic offense without actually having witnessed a traffic offense.

38. It was clearly established on February 2, 2023 that a police officer cannot remove a driver from an automobile, even if one assumes for the sake of argument that a motorist had committed a traffic violation, for a mere traffic violation.

39. It was clearly established on February 2, 2023 that a police officer cannot conduct a search of an automobile for investigation purposes without a reasonable or an articulable suspicion that a crime was being committed or an officer was in danger.

40. It was clearly established on February 2, 2023 that an officer cannot search the pockets of a motorist if he does not have probable cause to arrest him for a criminal offense, even if a traffic offense had been committed for the sake of argument, and even if for the sake of argument an officer had a concern about his safety or was conducting an investigatory search.

41. It was clearly established on February 2, 2023 that an officer cannot use force to detain a motorist when there are no grounds to do so.

42. It was clearly established on February 2,2023 that an officer must intervene to stop the clearly established unconstitutional acts of another officer in his presence.

43. It is clearly established that an officer cannot arrest and search the pants of an individual without probable cause to do so.

44. The defendants could not reasonably have believed that the actions described above were within the constitutional limitations on the exercise of their authority under the Fourth, and Fourteenth Amendments to the Constitution of the United States.

45. The defendants' conduct described above violated the clearly established rights of Mr. Baldwin described above.

46. As a result of the unconstitutional acts of the defendants described above, Mr. Baldwin has suffered and will continue to suffer the damages described above.

47. These claims are actionable under 42 USC § 1983.

WHEREFORE, the plaintiff Jordan Baldwin requests a judgment against the defendants for whatever amount is sufficient to compensate him for his injuries and damages plus punitive damages, all recoverable interest, costs, attorney's fees, and any other relief the court deems fair and just.

## **COUNT II -INTENTIONAL TORTS**

48. The plaintiff restates and realleges as though fully set forth herein paragraphs 1-47 of this complaint.

49. The actions of the defendants described above constitute a false arrest, a false imprisonment, and a battery.

50. As a result of the actions described above the plaintiff has suffered and will continue to suffer the damages set forth above.

WHEREFORE, the plaintiff Jordan Baldwin requests a judgment against the defendants for whatever amount is sufficient to compensate him for his injuries and damages plus all recoverable interest, costs, attorney's fees, and any other relief the court deems fair and just.

Dated: September 25, 2023          WILLIAM F. PIPER, PLC
                                                     Attorney for Plaintiff

                                     By:      /s/ William F. Piper
                                                      William F. Piper (P38636)
                                     BUSINESS ADDRESS:
                                                      1611 W. Centre Ave., Suite 209
                                                      Portage, MI 49024
                                                      (269) 321-5008